James B. Stoetzer, WSBA No. 06298
Matthew J. Macario, WSBA No. 26522
LANE POWELL SPEARS LUBERSKY LLP
Suite 4100
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 223-7000
Facsimile: (206) 223-7107

Attorneys for Plaintiff

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 30 2004

JAMES R. LARSEN, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

ALBERT M. ZLOTNICK,

Plaintiff,

v.

WORKLAND & WITHERSPOON, PLLC, GREGORY LIPSKER and JANE DOE LIPSKER, and the marital community comprised thereof,

Defendants.

CV-04-0140-AAM

No.

PLAINTIFF'S COMPLAINT FOR NEGLIGENCE, NEGLIGENT MISREPRESENTATION, BREACH OF CONTRACT, AND BREACH OF FIDUCIARY DUTY

**JURY TRIAL DEMANDED**

COMES NOW the plaintiff, Albert M. Zlotnick ("Zlotnick"), and for his complaint against defendants Workland & Witherspoon, PLLC, and Gregory Lipsker and Jane Doe Lipsker (collectively referred to as the "Workland & Witherspoon defendants"), alleges as follows:

COMPLAINT - 1

ORIGINAL

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

## PARTIES

1. Zlotnick is an individual who has resided in the State of Pennsylvania at all times relevant during the events alleged in this Complaint.

2. Workland & Witherspoon, PLLC ("Workland & Witherspoon") is a Washington professional limited liability corporation consisting of attorneys and support staff and engaged in the practice of law. It is believed that Workland & Witherspoon is a general partnership consisting of attorneys and support staff and engaged in the practice of law. At all relevant times, Zlotnick was continuously represented by Workland & Witherspoon. At all relevant times, Workland & Witherspoon transacted business in Spokane County, Washington, and had its offices located in Spokane County, Washington.

3. At all relevant times, Gregory Lipsker was an attorney and partner in the Spokane, Washington office of Workland & Witherspoon. At all relevant times, Zlotnick was continuously represented by Gregory Lipsker. Upon information and belief, at all relevant times, Gregory Lipsker and Jane Doe Lipsker were husband and wife. All acts and omissions set forth herein were done on behalf of and for the benefit of Workland & Witherspoon and within the scope and authority of Mr. Lipskers' duties and responsibilities as an agent of Workland & Witherspoon, and for the benefit of Mr. Lipsker's marital community. As a shareholder of Workland & Witherspoon, and under the doctrine of *respondeat superior*, Mr. Lipsker's actions and omissions are imputed to the Workland & Witherspoon firm.

COMPLAINT - 2

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiff and defendants are citizens of different states, and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. This Court has personal jurisdiction over the defendants because the defendants reside and conduct business within this district.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the defendants reside in this district, are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims herein occurred within this district.

## FACTUAL BACKGROUND

6. At the suggestion of Greg Lipsker, Mr. Zlotnick acquired a controlling interest in Cimarron-Grandview Group, Inc. ("Cimarron"), a shell corporation and former mining company that had done no business for many years. Upon information and belief, Mr. Zlotnick's investment in Cimarron was solicited by Greg Lipsker, the then-controlling shareholder of Cimarron. At all relevant times, Gregory Lipsker was an officer, director, and shareholder of Cimarron, and he served as Cimarron's attorney.

7. In the Spring of 2000, Mr. Zlotnick was contacted by Herbert Wolas, an attorney for Charles Band, a California entrepreneur. Mr. Wolas knew that Charles Band and some or all of his corporations, including one called "Full Moon Universe," were looking for investors. Mr. Band is in the entertainment business. Mr. Zlotnick

COMPLAINT - 3

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

attended an initial meeting in Hollywood, California on or about May 15, 2000, and following that meeting, he asked Lipsker for his legal assistance with respect to the transaction. Lipsker attended multiple meetings between Mr. Zlotnick, Band, and others, and drafted most of the documents associated with the contemplated transaction described below.

8. The general structure and features of the contemplated transaction (hereinafter the "Transaction") was as follows:

   a. Utilizing the shell merger concept, Cimarron would be the acquiring company and another company, iSurrender.com, Inc., would be the target.

   b. The shareholders of iSurrender would tender their shares to Cimarron, and receive back newly issued shares of Cimarron such that the "old" iSurrender shareholders would own 85% of the post-merger Cimarron, which would own 100% of the stock of iSurrender.

   c. Post-merger, Cimarron would change its name to Full Moon Universe, Inc., and its corporate domicile would change to Nevada.

   d. On consummation of the merger, Cimarron would be a public company.

   e. Mr. Zlotnick would advance substantially all of the money to finance the new company.

9. Eventually, the plan to change the corporate domicile of Full Moon Universe, Inc., was abandoned, and the entity formerly known as Cimarron is currently known as Full Moon Universe, Inc., a Washington Corporation."

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

10. The Workland & Witherspoon defendants expressly or impliedly represented to Mr. Zlotnick that the attorneys and staff of the Workland & Witherspoon defendants, including the named defendants in this case, were skilled and expert in representing clients in business transactions, including those specifically at issue in the Transaction between Zlotnick, Charles Band, and his associated entities. In reliance upon their express and implied representations and promises, Mr. Zlotnick retained the Workland & Witherspoon defendants to represent him with respect to all matters pertaining to, or arising from, the Transaction.

11. As set forth above, at all material times, Gregory Lipsker was counsel for Cimarron and had an ownership interest in Cimarron. Beginning in 1992, Mr. Lipsker served on the Board of Directors for Cimarron and acquired an unknown amount of stock in the company. Since Cimarron was the acquiring company in the Transaction, Mr. Lipsker was in a position to benefit financially from the Transaction. After the acquisition, Mr. Lipsker continued to serve as counsel and acting secretary to "Full Moon Universe, a Washington corporation." Accordingly, the Workland & Witherspoon defendants had an actual or potential conflict of interest with respect to representation of Mr. Zlotnick in the Transaction. The Workland & Witherspoon defendants failed to disclose their actual or potential conflicts of interest to Mr. Zlotnick, and failed to obtain any written conflict disclosures or conflict waivers from Mr. Zlotnick.

12. Gregory Lipsker attended at least two meetings with Mr. Zlotnick, Charles Band, and others in late June and early July, 2000, with respect to the

COMPLAINT - 5

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

Transaction. The Workland & Witherspoon defendants were also the principal drafters of most, if not all, of the contracts and agreements pertaining to the Transaction.

13. On June 8, 2000, the Workland & Witherspoon defendants sent Charles Band's accountant a "due diligence" checklist requesting certain documents on Mr. Zlotnick's behalf. However, there was no discussion between the Workland & Witherspoon defendants and Mr. Zlotnick regarding the "due diligence" effort, nor any legal recommendations made to address any issues raised during the process. The Workland & Witherspoon defendants failed to provide Mr. Zlotnick with a written report, and further failed to disclose to Mr. Zlotnick any of the risks uncovered during the "due diligence" effort.

14. On June 20, 2000, the parties executed a "Reorganization Agreement" for the Transaction, which was drafted by the Workland & Witherspoon defendants. The Reorganization Agreement drafted by the Workland & Witherspoon defendants suffers from several important flaws, including but not limited to (a) failing to include a provision requiring repayment in the event of breach of the agreement by Charles Band or iSurrender.com; (b) failing to include a provision restricting the use of the funds advanced by Mr. Zlotnick for specific purposes, and (c) failing to include a provision that would have prevented Charles Band from using the funds for purposes other than those contemplated by the parties to the Transaction.

15. On June 27, 2000, iSurrender executed a promissory note in the amount of $1.5 million to repay the interim financing Mr. Zlotnick was prepared to provide. The master note and companion security agreement, both of which were either drafted

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

or reviewed by the Workland & Witherspoon defendants, suffer from the same flaws as the Reorganization Agreement. In addition, the Workland & Witherspoon defendants failed, in whole or in part, to properly perfect a security interest in the collateral provided under the security agreement.

16. The Workland & Witherspoon defendants waited until July 5, 2000 – well after Mr. Zlotnick had signed the Reorganization and Security Agreements, and after he had already advanced significant sums of money – to meet personally with Charles Band and other iSurrender.com officers and directors. At these meetings, Mr. Lipsker asked Mr. Band and the other individuals to complete due diligence questionnaires. In his questionnaire responses, Band disclosed that he was involved in other litigation, a description of which was "to be provided." The Workland & Witherspoon defendants did nothing to follow up on this information, and failed to discuss any of the risks associated with other litigation with Mr. Zlotnick.

17. On August 11, 2000, Charles Band identified various personal and business-related debts, litigation matters, and settlements. The Workland & Witherspoon defendants failed to speak to any of Charles Band's creditors, and never obtained copies of the settlement agreements. Had they done so, the Workland & Witherspoon defendants would have discovered that Mr. Band's repayment of the reduced debt amounts was subject to payment plans that would have "sprung back" to their original amounts if the payments were not made in a timely manner. The moneys advanced by Mr. Zlotnick presented an obviously irresistible temptation to Mr. Band to fund his settlement obligations, yet the Workland & Witherspoon defendants failed to consider how to protect Mr. Zlotnick from this, and did not disclose any of the risks to Mr. Zlotnick.

COMPLAINT - 7

119488.0001/1100572.1

Lane Powell Spears Lubersky LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

18. On August 27, 2000, the parties to the Transaction executed the Share Exchange Agreement, along with the Voting Trust Agreement. The Workland & Witherspoon defendants knew that the Voting Trust Agreement was supposed to confer on Mr. Zlotnick the right to vote Charles Band's shares; however, the Voting Trust Agreement – drafted by the Workland & Witherspoon defendants – only transferred the right to vote 40% of Charles Band's shares, improperly leaving Mr. Band in majority voting control of the company.

19. In the meantime, iSurrender needed interim financing. Mr. Zlotnick agreed to loan $1.5 million in interim financing to iSurrender. In fact, he did more than was initially asked: Before the implementation of the merger, Mr. Zlotnick loaned $1,875,000 to iSurrender based upon the belief that Full Moon would produce 10-20 new films per year.

20. On October 13, 2000, iSurrender.com (now Full Moon California) released its 3rd Quarter financial report. The balance sheet assets identified $1,342,971 in "other receivables," an amount that increased from only $192,950 as of May 31, 2000. In fact, these "other receivables" represented money that Charles Band improperly converted from iSurrender to repay old film production debts, of other companies, that he had personally guaranteed.

21. On October 16, 2000, the parties to the Transaction modified the promissory note to the sum of $1,875,000, to reflect the additional amounts Mr. Zlotnick had advanced. A second note modification occurred on October 17, 2000, which provided that Mr. Zlotnick would be repaid from the debenture financing. The

COMPLAINT - 8

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

Workland & Witherspoon defendants failed, however, to address how Mr. Zlotnick would be repaid if there was no debenture financing.

22. On November 8, 2000, the parties to the Transaction signed an "Agreement to Restructure," a one-page document drafted by the Workland & Witherspoon defendants, which restructured fundamental aspects of the transaction. However, the Agreement to Restructure failed to release – or even mention – any of Mr. Zlotnick's obligations under the Reorganization Agreement.

23. On January 18, 2001, with note payment dates approaching, and no money to make those payments, Charles Band provided a personal financial statement in which he claimed an interest in a castle in Umbria, Italy. Between January and April 2001, Mr. Band told Mr. Zlotnick in writing several times that he would provide a security interest in the Italian castle in order to further secure the debt. Charles Band signed an agreement declaring that the castle was in fact collateral for the money owed Mr. Zlotnick. The Workland & Witherspoon defendants failed to properly investigate whether Mr. Band in fact owned the castle, or to determine the legal requirements necessary to perfect an interest in Italian real estate, or even to properly document and effectuate the agreement.

24. After several failed efforts by Mr. Zlotnick to salvage his relationship with Charles Band, within several months, Mr. Band defaulted on his obligations, and Mr. Zlotnick was forced to file a lawsuit styled as <u>Zlotnick v. Full Moon Universe, Inc., et al.</u>, in the Superior Court of the State of California for the County of Los Angeles, Case No. BC 262183 (the "California Litigation"). The failure of the

COMPLAINT - 9

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

Workland & Witherspoon defendants to draft the Agreement to Restructure in such a way as to release Mr. Zlotnick's obligations under the Reorganization Agreement permitted the defendants to file a cross-complaint against Mr. Zlotnick in the California Litigation, alleging that those obligations remained in effect and that Mr. Zlotnick was liable for failing to engage in "best efforts" to raise money for Full Moon. In addition, Mr. Band disputed Mr. Zlotnick's interest in the Italian castle in the California Litigation.

25. Mr. Zlotnick was not compensated pursuant to his consulting agreement, which was exacerbated by the fact that the Workland & Witherspoon defendants failed to properly collateralize the agreement. Mr. Zlotnick also invested additional monies and incurred additional expenses to be proven at trial.

26. In connection with a court-supervised settlement effort, the California Litigation was reduced to judgment on December 8, 2003. The California Litigation defendants failed to execute the settlement documents and have defaulted under the terms of the judgment. The judgment has been, and is presently, uncollectible. As a result, Mr. Zlotnick must now seek the full amount of his damages from the Workland & Witherspoon defendants in order to make himself whole. On July 3, 2003, and by subsequent amendments, Mr. Zlotnick and the Workland & Witherspoon defendants entered into an agreement tolling the statute of limitations and any other time-related defenses until April 30, 2004.

27. The Workland & Witherspoon defendants' actions described above represent a breach of their contractual, fiduciary, and common law duties continuously

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

owed to Mr. Zlotnick during the course of the legal representation. Moreover, the Workland & Witherspoon defendants' breach of these continuous duties was the proximate cause of substantial damage to Mr. Zlotnick. Had the Workland & Witherspoon defendants acted with the requisite standard of care in representing Mr. Zlotnick, Mr. Zlotnick would not have sustained damages now exceeding $3 million.

## FIRST CAUSE OF ACTION: NEGLIGENCE

28. Mr. Zlotnick reasserts and incorporates the preceding paragraphs as if fully set forth.

29. At all relevant times, there was an attorney-client relationship between Mr. Zlotnick and the Workland & Witherspoon defendants. The Workland & Witherspoon defendants owed a continuous duty to Mr. Zlotnick to exercise that degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in the State of Washington.

30. The Workland & Witherspoon defendants negligently breached their continuous duty to Mr. Zlotnick in a variety of ways, including but not limited to (a) failing to disclose its actual or potential conflict of interest to Mr. Zlotnick; (b) failing to obtain written conflict disclosures or conflict waivers from Mr. Zlotnick; (c) inadequate due diligence efforts with respect to the Transaction; (d) inadequate or non-existent risk disclosures to Mr. Zlotnick; (e) drafting agreements with respect to the Transaction that were highly unfavorable to Mr. Zlotnick; and (f) failing to properly perfect security interests. The Workland & Witherspoon defendants'

COMPLAINT - 11

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

conflicts of interest – coupled with and resulting in poor or nonexistent disclosures, advice, and documentation – caused an inherently flawed and incredibly risky transaction to proceed, when non-conflicted counsel clearly would have recommended otherwise.

31. As a direct and proximate result of the Workland & Witherspoon defendants' breach of their continuous duty, Mr. Zlotnick has suffered, and continues to suffer, substantial economic loss currently exceeding $3 million. Some or all of these damages are liquidated sums. The specific amount of Mr. Zlotnick's damages will be proven at the time of trial.

**SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**

32. Mr. Zlotnick reasserts and incorporates the preceding paragraphs as if fully set forth.

33. The Workland & Witherspoon defendants expressly or impliedly represented to Mr. Zlotnick that the attorneys and staff of the Workland & Witherspoon defendants, including the named defendants in this case, were skilled and expert in representing clients in business transactions, including those specifically at issue in the Transaction between Mr. Zlotnick, Charles Band, and his associated entities.

34. The representations of the Workland & Witherspoon defendants were false and negligently made.

35. Mr. Zlotnick justifiably relied upon these representations, to his substantial and irreparable detriment.

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

36. As a direct and proximate result of the Workland & Witherspoon defendants' negligent representations, Mr. Zlotnick has suffered, and continues to suffer, substantial economic loss currently exceeding $3 million. Some or all of these damages are liquidated sums. The specific amount of Mr. Zlotnick's damages will be proven at the time of trial.

### THIRD CAUSE OF ACTION: BREACH OF CONTRACT

37. Mr. Zlotnick reasserts and incorporates the preceding paragraphs as if fully set forth.

38. The Workland & Witherspoon defendants contracted with Zlotnick, expressly and impliedly promising to exercise that degree of care, skill, diligence, and knowledge to sufficiently represent Mr. Zlotnick's interests with respect to the Transaction.

39. The Workland & Witherspoon defendants failed to exercise the degree of care and skill they promised, thereby breaching their contract with Mr. Zlotnick.

40. As a direct and proximate result of the Workland & Witherspoon defendants' breach of contract, Mr. Zlotnick has suffered, and continues to suffer, substantial economic loss, currently exceeding $3 million. Some or all of these damages are liquidated sums. The specific amount of Mr. Zlotnick's damages will be proven at the time of trial.

### FOURTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

41. Mr. Zlotnick reasserts and incorporates the preceding paragraphs as if fully set forth.

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

42. At all relevant times, there was an attorney-client relationship between Mr. Zlotnick and the Workland & Witherspoon defendants. As Mr. Zlotnick's attorneys, the Workland & Witherspoon defendants owed a continuous fiduciary duty of care, loyalty, and good faith to Mr. Zlotnick.

43. The Workland & Witherspoon defendants breached their fiduciary duty to Zlotnick in a variety of ways, including but not limited to (a) failing to disclose its actual or potential conflict of interest to Mr. Zlotnick; (b) failing to obtain written conflict disclosures or conflict waivers from Mr. Zlotnick; (c) inadequate due diligence efforts with respect to the Transaction; (d) inadequate or non-existent risk disclosures to Mr. Zlotnick; (e) drafting agreements with respect to the Transaction that were highly unfavorable to Mr. Zlotnick; and (f) failing to properly perfect security interests.

44. As a direct and proximate result of the Workland & Witherspoon defendants' breach of their continuous fiduciary duties owed to Mr. Zlotnick, Mr. Zlotnick has suffered, and continues to suffer, substantial economic loss, currently exceeding $3 million. Some or all of these damages are liquidated sums. The specific amount of Mr. Zlotnick's damages will be proven at time of trial.

## RELIEF REQUESTED

WHEREFORE, plaintiff Zlotnick respectfully requests that this court:

1. Enter judgment against the Workland & Witherspoon defendants, jointly and severally, in favor of Mr. Zlotnick in an amount of damages which will be proven at the time of trial;

COMPLAINT - 14

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1

2. Award Mr. Zlotnick prejudgment interest on all liquidated sums, and award Zlotnick all reasonable attorneys' fees and costs to which he is entitled for all legal representation described in this Complaint, including the Workland & Witherspoon defendants' representation of Mr. Zlotnick to date, all attorneys' fees and costs incurred by Mr. Zlotnick in the California Litigation, and in this action;

3. Permit Mr. Zlotnick to amend its pleadings to conform with evidence discovered prior to and/or offered at time of trial;

4. Enter an order disgorging all fees received by the Workland & Witherspoon defendants; and

5. Grant such other relief as it deems appropriate under the circumstances.

DATED this 29 day of April, 2004.

LANE POWELL SPEARS LUBERSKY LLP

By _____
James B. Stoetzer, WSBA No. 06298
Matthew J. Macario, WSBA No. 26522
Attorneys for Plaintiff
Albert M. Zlotnick

LANE POWELL SPEARS LUBERSKY LLP
Suite 4100
1420 Fifth Avenue
Seattle, WA 98101
Telephone: (206) 223-7000
Facsimile: (206) 223-7107

COMPLAINT - 15

LANE POWELL SPEARS LUBERSKY LLP
SUITE 4100
1420 FIFTH AVENUE
SEATTLE, WA 98101
(206) 223-7000

119488.0001/1100572.1